## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TONY MAPLE and<br>(2) LISA MAPLE,<br><br>Plaintiffs,<br><br>vs.<br><br>(1) UNITED STATES OF AMERICA<br>ex rel. OFFICE OF PERSONNEL<br>MANAGEMENT,<br>(2) BLUECROSS BLUESHIELD<br>ASSOCIATION, and<br>(3) BLUECROSS BLUESHIELD OF<br>OKLAHOMA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. CIV-09-1405-C<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT
## BY DEFENDANTS BLUECROSS BLUESHIELD ASSOCIATION
## AND BLUECROSS BLUESHIELD OF OKLAHOMA

---

Kevin D. Gordon, OBA #10826
Alison M. Howard, OBA #19835
CROWE & DUNLEVY, P.C.
20 North Broadway, Suite 1800
Oklahoma City, OK 73102-8273
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
kevin.gordon@crowedunlevy.com
alison.howard@crowedunlevy.com




February 16, 2010

-And Of Counsel-

Anthony F. Shelley
MILLER & CHEVALIER Chartered
655 Fifteenth Street, NW, Suite 900
Washington, D.C.  20005
Telephone:  (202) 626-5924
Facsimile:  (202) 626-5801
ashelley@milchev.com


ATTORNEYS FOR DEFENDANTS,
BLUECROSS BLUESHIELD
ASSOCIATION AND BLUECROSS
BLUESHIELD OF OKLAHOMA

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

   A.   CONTRACTUAL AND REGULATORY BACKGROUND ...................................... 3
   B.   THIS LAWSUIT .................................................................................................... 7

ARGUMENT AND AUTHORITY ...................................................................................... 9

   I.   PLAINTIFFS' FEHBA CLAIM MUST BE DISMISSED AS TO THE BLUE
       CROSS DEFENDANTS, WHO ARE NOT PROPER PARTIES TO THE FEHBA
       ENROLLMENT AND BENEFITS DISPUTE .......................................................... 9

       A.   To The Extent Plaintiffs Challenge Their Disenrollment From The
             Plan, FEHBA Permits Them To Sue Only Mr. Maple's Employing
             Office, Not The Blue Cross Defendants .......................................................... 9

       B.   To The Extent Plaintiffs Challenge BCBSOK'S Decision Retroactively
             To Deny Benefits, FEHBA Permits Them To Sue Only OPM,
             Not the Blue Cross Defendants .......................................................... 12

   II.   PLAINTIFFS' COMMON LAW CLAIMS ARE EITHER PREEMPTED OR
        SUPERSEDED BY FEHBA .......................................................................... 15

       A.   If Plaintiffs' Common Law Claims Arise Under State Law, They Are
             Preempted By FEHBA .......................................................................... 16

       B.   If Plaintiffs' Common Law Claims Arise Under Federal Common Law,
             They Are Superseded By FEHBA .......................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Botsford v. Blue Cross & Blue Shield of Mont., Inc.*,
314 F.3d 390 (9th Cir. 2002) ........................................................ 13, 15, 17, 19

*Bridges v. Blue Cross & Blue Shield Ass'n*,
935 F. Supp. 37 (D.D.C. 1996) ................................................................ 27

*Bryan v. OPM*,
165 F.3d 1315 (10th Cir. 1999) ........................................................ passim

*Burkey v. Gov't Employees Hosp. Ass'n*,
983 F.2d 656 (5th Cir. 1993) ................................................................ 15, 19

*Carter v. Blue Cross & Blue Shield of Fla., Inc.*,
61 F. Supp. 2d 1241 (N.D. Fla. 1999) ........................................................ 20

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006) ........................................................................ passim

*Farrow v. Kaiser Found. Health Plan of the Mid-Atl. States*,
No. 00-24, 2000 U.S. Dist. LEXIS 21999 (E.D. Va. Feb. 25, 2000) ........................... 20

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ........................................................................ 23

*GFF Corp. v. Associated Wholesale Grocers*,
130 F.3d 1381 (10th Cir. 1997) ............................................................... 7

*Hayes v. Prudential Ins. Co. of Am., Inc.*,
819 F.2d 921 (9th Cir. 1987) ................................................................ 19

*Kight v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*,
34 F. Supp. 2d 334 (E.D. Va. 1999) .......................................................... 20

*Medcenters Health Care v. Ochs*,
854 F. Supp. 589 (D. Minn. 1993), *aff'd*, 26 F.3d 865 (8th Cir. 1994) ...................... 28

*Milwaukee v. Illinois*,
451 U.S. 304 (1981) .................................................................. 24, 25, 26, 28

*Myers v. United States*,
    767 F.2d 1072 (4th Cir. 1985)..................................................................20

*Negron v. Patel*,
    6 F. Supp. 2d 366 (E.D. Pa. 1998) ........................................................20

*Pollitt v. Health Care Serv. Corp.*,
    558 F.3d 615 (7th Cir.), *cert. granted*, 130 S. Ct. 396 (2009) ...............15, 23

*Ramsey Winch, Inc. v. Henry*,
    555 F.3d 1199 (10th Cir. 2009)................................................................23

*Resolution Trust Corp. v. Frates*
    52 F.3d 295 (10th Cir. 1995)...................................................................26

*Ruff v. OPM*,
    No. 06-cv-1440 (Order of March 30, 2007) (slip op.) ..........................20, 21

*St. Mary's Hosp. v. CareFirst of Md., Inc.*,
    192 F. Supp. 2d 384 (D. Md. 2002) .......................................................20

*Zukor v. Inova Health Care Services*,
    No. 99-1909, 2000 U.S. Dist. LEXIS 21998 (E.D. Va. Feb. 23, 2000)...........19

### STATUTES

5 U.S.C. § 8901(7) ...................................................................................6

5 U.S.C. §§ 8901-14 ................................................................................4

5 U.S.C. § 8902 .......................................................................................6

5 U.S.C. §§ 8903 .....................................................................................6

5 U.S.C. § 8902(j) ....................................................................................9

5 U.S.C. § 8902(m)(1) .......................................................................passim

5 U.S.C. § 8903(1) ...................................................................................6

5 U.S.C. § 8906(b)(1) ..............................................................................7

5 U.S.C. § 8906(b)(2) ..............................................................................7

5 U.S.C. § 8906(f).....................................................................................7

5 U.S.C. § 8907(b) ...................................................................................8

5 U.S.C. § 8913 ........................................................................................................ 6

5 U.S.C. § 8913(a) ........................................................................................... 15, 27

5 U.S.C. § 8913(b) ................................................................................................ 13

12 U.S.C. 1821(k) ........................................................................................... 26, 27

12 U.S.C. § 1821(k) .............................................................................................. 26

## OTHER AUTHORITIES

5 C.F.R. § 890.101(a) ........................................................................................... 13

5 C.F.R. §§ 890.101(a), 890.103-104 ..................................................................... 7

5 C.F.R. §§ 890.103 ................................................................................................ 7

5 C.F.R. § 890.104 ....................................................................................... 7, 8, 28

5 C.F.R. § 890.105 ........................................................................................... 9, 17

5 C.F.R. § 890.105(a)(1) ....................................................................................... 16

5 C.F.R. § 890.105(a)(2) ....................................................................................... 16

5 C.F.R. § 890.107(a) ................................................................................... 8, 14, 15

5 C.F.R. § 890.107(a) ........................................................................................... 28

5 C.F.R. § 890.107(c) ............................................................................. 9, 16, 17, 28

5 C.F.R. § 890.107(c) ..................................................................................... 20, 21

5 C.F.R. § 890.107(d)(1) .................................................................................. 9, 17

5 C.F.R. § 890.110(a) ........................................................................................... 13

5 C.F.R. § 890.201(a)(1) ....................................................................................... 15

5 C.F.R. § 890.204 ................................................................................................ 15

5 C.F.R. § 890.308(a)(1) ....................................................................................... 14

48 C.F.R. § 1609.7001(b)(2) ................................................................................. 15

48 C.F.R. § 1609.7001(d) ..................................................................................... 15

48 C.F.R. § 1632.170(b) ................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4

Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, §
    3(c), 112 Stat. 2363, 2366 ....................................................................... 10

H.R. Rep. No. 105-374 (1997) ...................................................................... 10

S. Rep. No. 95-903, *reprinted in* 1978 U.S.C.C.A.N. 1412 ............................ 10

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants BlueCross BlueShield Association ("BCBSA") and BlueCross BlueShield of Oklahoma ("BCBSOK") (collectively, "the Blue Cross Defendants") move to dismiss Plaintiffs' claims against them for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This case involves a dispute over enrollment in, and benefits under, a health benefits plan for federal employees governed exclusively by federal statute. Plaintiff Tony Maple was an employee of the United States Post Office. Through Mr. Maple's federal employment, both he and his wife Lisa (also a Plaintiff here) were enrolled in the Blue Cross and Blue Shield Service Benefit Plan ("the Plan"), one of the federal government's health benefits plans for federal employees and their dependents. The Plan is governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14. For a two-year period after Mr. Maple's employment with the Post Office ended, Plaintiffs continued to receive benefits under the Plan notwithstanding that they were no longer eligible for enrollment. Upon being informed of the enrollment error by the federal government, which is responsible for all enrollment matters under the Plan, BCBSOK -- which administers and underwrites benefits for the Plan in Oklahoma -- retroactively denied benefits it had paid on behalf of Plaintiffs during this two-year period, as required by a federal government contract establishing the Plan.

In accordance with the disputed claims process established by FEHBA's implementing regulations, Plaintiffs then sought reconsideration of the benefits denials with BCBSOK and subsequently appealed the dispute to the United States Office of Personnel

1

Management ("OPM"), which superintends FEHBA. Still allegedly aggrieved, Plaintiffs subsequently sued OPM and the Blue Cross Defendants in this Court, asserting violations of FEHBA and a variety of common law claims.

As to the Blue Cross Defendants, Plaintiffs' Complaint must be dismissed in its entirety. First, Plaintiffs' claim against the Blue Cross Defendants for violating FEHBA must be dismissed as a claim against improper parties. FEHBA's implementing regulations provide that, where an enrollee has a benefits grievance, the enrollee may sue *only* OPM, not the carrier; for enrollment disputes, only the enrollee's federal employing office may be sued. The Blue Cross Defendants, therefore, are improper parties in any cause of action contesting benefits or enrollment decisions under FEHBA.

Second, Plaintiffs' common law claims against the Blue Cross Defendants must also be dismissed. To the extent Plaintiffs' common law claims sound in state law, they are expressly preempted by FEHBA's preemption provision, 5 U.S.C. § 8902(m)(1), which preempts all state law challenges to benefits and enrollment in a FEHBA plan. If Plaintiffs' common law claims instead arise under federal common law, they still must dismissed, because FEHBA supersedes federal common law with respect to enrollment and benefits disputes. FEHBA's implementing regulations establish a comprehensive remedial scheme for disputes about benefits and enrollment -- culminating in a suit against OPM to resolve the former, and a suit against the enrollee's employing office to resolve the latter -- that leaves no room for the courts to create alternative federal common law remedies.

## BACKGROUND

**A.   CONTRACTUAL AND REGULATORY BACKGROUND**

1.      *The Service Benefit Plan*.  Congress enacted FEHBA in 1959 to provide health benefits for federal employees.  Instead of selecting one insurer for this purpose, it vested a government agency (now OPM) with broad discretion to establish insurance plans with many different insurers, which are known under the FEHBA program as "carriers."  *See* 5 U.S.C. §§ 8901(7), 8902-03, 8913.

One such plan is the Service Benefit Plan.  *See* 5 U.S.C. § 8903(1).  The Service Benefit Plan is formed by federal government contract -- known as "CS 1039" -- between OPM and BCBSA.  BCBSA, in turn, acts on behalf of local Blue Cross and Blue Shield companies nationwide, which underwrite the Plan and administer it in their individual localities; BCBSOK administers the Service Benefit Plan in Oklahoma.  *See* 2002 Service Benefit Plan Master Contract (Ex. 1) [hereinafter "2002 Master Contract"]; 2006 Service Benefit Plan Master Contract (Ex. 2) [hereinafter "2006 Master Contract"]; 2004 Statement of Benefits for the Service Benefit Plan at 4 (Ex. 3) [hereinafter "2004 Statement of Benefits"]; 2005 Statement of Benefits for the Service Benefit Plan at 4 (Ex. 4) [hereinafter "2005 Statement of Benefits"]; 2006 Statement of Benefits for the Service Benefit Plan at 4 (Ex. 5) [hereinafter "2006 Statement of Benefits"]; 2007 Statement of Benefits for the Service Benefit Plan at 4 (Ex. 6) [hereinafter "2007 Statement of Benefits"].[1]

---

[1] The 2002 and 2006 contracts were the operable contracts governing the Plan from 2004-2007, which is the time period when the Blue Cross Defendants took the actions about which Plaintiffs here complain.  The 2004-2007 Statements of Benefits were the applicable plan brochures distributed to enrollees during that same time period.  Reference to these documents in a motion to dismiss is permissible, given that Plaintiffs themselves reference

2.   *Enrollment Procedures*.   Federal employees do not contract directly with BCBSA or BCBSOK for health benefits.   Instead, they enroll in the Service Benefit Plan through their employing office.   *See* 5 C.F.R. §§ 890.101(a), 890.103-104.   The Service Benefit Plan master contract likewise emphasizes that the government, not the FEHBA carrier, is responsible for enrollment.   *See* 2002 Service Benefit Plan Master Contract § 2.1(a)(2) (Ex. 1) ("A person's eligibility for coverage, effective date of enrollment, the level of benefits (option), the effective date of termination or cancellation of a person's coverage, the date any extension of a person's coverage ceases, and any continuance ceases, shall be determined in accordance with regulations or directions of OPM given pursuant to [FEHBA].");  2006 Service Benefit Plan Master Contract § 2.1(a)(2) (Ex. 1) (same).   Once enrolled in the Plan, enrollees are responsible for about 25% of the premium, with the government paying the remainder.   *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f).   The enrollees' and the government's contributions are placed in a fund in the U.S. Treasury, from which the Blue Cross and Blue Shield entities draw directly to pay benefits.   *See id.* § 8909(a); 48 C.F.R. § 1632.170(b); *see generally Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).

3.   *Enrollment Disputes*.   With respect to enrollment disputes, OPM's regulations provide for administrative review within the pertinent employing federal agency.   *See* 5 C.F.R. § 890.104.   The employing agency first makes an "initial decision" on any

---

the relevant insurance contracts in seeking relief, even asserting breach of these contracts. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

enrollment issues, and then an affected individual may seek reconsideration, which yields a "final decision . . . in writing." *Id.* § 890.104(e). Because the federal agencies are responsible for all enrollment determinations with the Plan, OPM's regulations provided that "[a] suit to compel enrollment ... must be brought against the employing office that made the enrollment decision." 5 C.F.R. § 890.107(a).

    4.   *Benefits Provisions*. OPM's "contracts with carriers, FEHBA instructs, 'shall contain a detailed statement of benefits offered.'" *Empire*, 547 U.S. at 684 (quoting 5 U.S.C. § 8902(d)); *see also* 5 U.S.C. § 8907(b). CS 1039, accordingly, directs the carrier to provide benefits in accordance with an "appended brochure" that outlines at length the panoply of medical costs the Plan will reimburse. *Empire*, 547 U.S. at 684.

    CS 1039 also details the actions the carriers are required to take to recapture benefits erroneously paid. The contract provides: "If the Carrier or OPM determines that a Member's claim has been paid in error for any reason (except fraud and abuse), the Carrier shall make a prompt and diligent effort to recover the erroneous payment to the member from the member or, if to the provider, from the provider." 2002 Master Contract § 2.3(g) (Ex. 1); 2006 Master Contract § 2.3(g) (Ex. 2).

    5.   *Benefits Disputes*. Under FEHBA, each contract into which OPM enters must require the carrier "to pay for or provide a health service or supply in an individual case" if OPM "finds that the employee . . . is entitled thereto under the terms of the contract." 5 U.S.C. § 8902(j). OPM has implemented this provision by establishing a mandatory administrative remedy at the agency for those who believe that the carrier has wrongfully denied benefits. 5 C.F.R. § 890.105; *see also id.* § 890.107(d)(1). The administrative

remedy is to be invoked only after filing a claim with the carrier and after exhausting all internal appeals (including a right to reconsideration) with the carrier. *Id.* § 890.105. If OPM finds that the denial by the carrier is incorrect, the carrier is contractually obligated to pay the benefits. 5 U.S.C. § 8902(j).

OPM's regulations also provide that any court litigation over benefits shall be brought only as an action against <u>OPM</u> for judicial review of its administrative decision. *See* 5 C.F.R. § 890.107(c). The regulations expressly state that litigation "must be brought against OPM and *not against the carrier or carrier's subcontractors.*" 5 C.F.R. § 890.107(c) (emphasis added). Indeed, the Supreme Court has noted that "this regulation channels disputes over coverage or benefits into federal court by designating a United States agency (OPM) *sole* defendant." *Empire*, 547 U.S. at 686-87 (emphasis added). In addition, no suit whatsoever shall be commenced "prior to exhaustion of the [OPM] administrative remed[y]." 5 C.F.R. § 890.107(d)(1). "[T]he recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.* § 890.107(c).

6.   *FEHBA's Preemption Provision*.   In 1978, Congress added a preemption provision to FEHBA, which it then amended in 1998 in order to "broaden[]" FEHBA's preemptive scope. H.R. Rep. No. 105-374, at 9 (1997). As currently in force, FEHBA's preemption provision states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366). With this provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they may live" and to "confirm" that "FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) completely displace State or local law relating to health insurance or plans." H.R. Rep. No. 105-374, at 9, 16; *accord* S. Rep. No. 95-903, at 2, *reprinted in* 1978 U.S.C.C.A.N. 1412, 1413 (legislative history of FEHBA's original preemption provision); *see also Empire*, 547 U.S. at 685-86.

## B.   THIS LAWSUIT

Plaintiff Tony Maple was an employee of the United States Post Office. Compl. ¶ 10. Through his federal employment, Tony and his wife Lisa were enrolled in the Plan, which is administered in Oklahoma by BCBSOK. *Id.* ¶ 11. In 1999, Mr. Maple suffered a job-related injury. *Id.* ¶ 12. On January 30, 2001, due to Mr. Maple's injury, the Maples' enrollment in the Plan was transferred from the Post Office to the federal Office of Workers' Compensation Program, *id.* ¶ 13, which is part of the Department of Labor ("DOL"). On August 17, 2004, DOL notified Mr. Maple that he was no longer entitled to Wage Loss and Schedule Award Compensation benefits. *Id.* ¶ 14.

Notwithstanding the fact that the Plaintiffs, at least by September 2004, were no longer eligible for enrollment in the Plan, they continued to claim and receive benefits through the Spring of 2007. *Id.* ¶ 20. Indeed, as late as October of 2006, the Office of Workers' Compensation allegedly continued to inform Plaintiffs that they had coverage

under the Plan. *Id.* ¶ 19. On April 28, 2007, however, the error was caught and the Maples' enrollment in the Plan was terminated, retroactive to September 7, 2004. *Id.* ¶ 23. BCBSOK then sought to recover the benefits the Plan had erroneously paid to Plaintiffs' providers since September of 2004, *see id.* ¶ 24, as required by the terms of CS 1039 (OPM's contract with BCBSA). In apparent compliance with FEHBA's remedial scheme for benefits grievances, the Maples initially sought reconsideration from BCBSOK of its decision retroactively to deny the benefits, and subsequently appealed directly to OPM. *Id.* ¶¶ 25-29.

Having been unsuccessful in the reconsideration procedures at BCBSOK and the appeal process at OPM, Plaintiffs then filed this action, naming as defendants not only OPM (as permitted by FEHBA's implementing regulations), but also BSBSA and BCBSOK (as prohibited by FEHBA's implementing regulations). As pertains to the Blue Cross Defendants, Plaintiffs asserted four causes of action: (1) failing to comply with FEHBA and its implementing regulations by allegedly failing to reconcile its enrollment records with those provided by OPM, and failing to provide Plaintiffs sufficient advance notice of their enrollment termination, *id.* ¶¶ 44-53; (2) promissory estoppel, based on the Blue Cross Defendants' alleged representations to the Plaintiffs from 2004 - 2007 that they remained enrolled in the Plan, *id.* ¶¶ 54-60; (3) breach of the duty of good faith and fair dealing, based on BCBSOK's retroactive denials of benefits, *id.* ¶¶ 61-65; and (4) breach of contract, based on BCBSOK's failure to pay benefits until the 31st day after BCBSOK provided the Plaintiffs with notice of cancellation, in purported violation with the terms of the Plan, *id.* ¶¶ 66-72.

## ARGUMENT AND AUTHORITY

I.   **PLAINTIFFS' FEHBA CLAIM MUST BE DISMISSED AS TO THE BLUE CROSS DEFENDANTS, WHO ARE NOT PROPER PARTIES TO THE FEHBA ENROLLMENT AND BENEFITS DISPUTE**

Plaintiffs' first claim against the Blue Cross Defendants -- alleged actually in the Complaint's "Second Cause of Action" -- avers that the Blue Cross Defendants failed to comply with FEHBA and its implementing regulations as they relate to enrollment and benefits.  In particular, Plaintiffs assert that the Blue Cross Defendants failed in their "duty to compare its insured enrollment data with that provided by OPM" and to request from OPM any information necessary to resolve any discrepancies.  Compl. ¶¶ 45-46.  Plaintiffs also complain that the Blue Cross Defendants failed to provide them with 31-days advance notice of their disenrollment, as required by FEHBA's regulations.  *Id.* ¶¶ 49-50.  As a remedy, Plaintiffs "request that the Court order [the Blue Cross Defendants] to pay benefits in accordance with the policy terms through the 31st day after [the Blue Cross Defendants] provided [Plaintiffs] with notice of cancellation."  *Id.* ¶ 52.  No matter if Plaintiffs' ultimate grievance concerns enrollment or benefits, FEHBA makes clear that they may sue only the government -- not the Blue Cross Defendants.

A.   **To The Extent Plaintiffs Challenge Their Disenrollment From The Plan, FEHBA Permits Them To Sue Only Mr. Maple's Employing Office, Not The Blue Cross Defendants**

With respect to enrollment, Congress in FEHBA delegated to OPM the authority to prescribe necessary regulations (*see* 5 U.S.C. § 8913(b)), and OPM in turn has vested responsibility for enrollment squarely in the individual employing agencies.  Indeed, under OPM's regulations, "[e]nroll means to submit to the *employing office* an appropriate request

9

electing to be enrolled in a health benefits plan." 5 C.F.R. § 890.101(a) (emphasis added). "Each employing office," moreover, "must report to each carrier or its surrogate on a quarterly basis the names of the individuals who are enrolled in the carrier's plan in a format and containing such information as required by OPM." 5 C.F.R. § 890.110(a). The employing office is further empowered to "make retroactive corrections of administrative errors." *Id.* § 890.103(a). The fact that enrollment is beyond the province of the Blue Cross Defendants and that they must abide by any decisions made by the employing office is made even clearer by the terms of BCBSA's contract with OPM: "A person's eligibility for coverage, effective date of enrollment, . . . the effective date of termination or cancellation of a person's coverage . . . shall be determined in accordance with regulations . . . of OPM given pursuant to [FEHBA]." *See* 2002 Master Contract § 2.1(a)(2) (Ex. 1); 2006 Master Contract § 2.1(a)(2) (Ex. 2) (same).

Given that the employing office is responsible for enrollment, FEHBA's implementing regulations, in turn, instruct that an enrollee is to first press any enrollment grievances with his or her employing office. Specifically, where the carrier "cannot reconcile its records of an individual's enrollment with agency enrollment records . . . [that] does not show him or her as enrolled" and thus removes the individual from its enrollment rolls, 5 C.F.R. § 890.308(a)(1), "[t]he enrollee may request his or her *employing office* to reconsider the carrier's decision," *id.* § 890.308(a)(3) (emphasis added). After reconsideration, the employing office is given full authority to re-enroll the individual: "If upon reconsideration the employing office determines the individual is entitled to continued enrollment in the plan, the disenrollment . . . is void and coverage is reinstated

10

retroactively." *Id.* § 890.308(a)(5). If the employing office refuses to reinstate the individual retroactively, the regulations further provide that "an individual may request an agency or retirement system to reconsider an initial decision of its employing office denying coverage or change of enrollment." *Id.* § 890.104(a). To ensure that the employee's reconsideration request is fairly evaluated at the agency level, the regulations require that "[t]he reconsideration review must be an independent review designated at or above the level at which the initial decision was rendered." *Id.* § 890.104(c)(2). The agency must then issue a "final decision, which must be in writing and must fully set forth the findings and conclusions." *Id.* § 890.104(e).

Most critically to the instant motion, should an individual disagree with the employing agency's final decision, he or she may bring a suit to compel enrollment. Such "[a] suit to compel enrollment," however, "*must* be brought against the employing office that made the enrollment decision." 5 C.F.R. § 890.107(a) (emphasis added). Nowhere in FEHBA or its implementing regulations, however, is an individual permitted to sue the carrier over an enrollment dispute. As a result, "suits related to a federal agency's health-benefits-coverage decisions must name as the defendant the Office of Personnel Management or the employing agency rather than the insurance carrier." *Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir.), *cert. granted*, 130 S. Ct. 396 (2009).

Here, Plaintiffs Second Cause of Action asserts that the Blue Cross Defendants violated FEHBA by improperly disenrolling them from the Plan. As explained above, FEHBA lays out a detailed remedy for precisely this situation -- namely, an initial appeal to the employing office, followed by a request for reconsideration by the employing agency,

11

followed by a suit against the employing office.  No part of that remedial scheme authorizes

a suit against the carrier.  Indeed, 5 C.F.R. § 890.107(a) states explicitly that any suit to

compel enrollment "*must* be brought against *the employing office* that made the enrollment

decision" (emphasis added).  Because FEHBA does not contemplate a cause of action

against the carrier with respect to enrollment matters, to the extent Plaintiffs' FEHBA cause

of action treads on matters of enrollment, it must be dismissed as to the Blue Cross

Defendants.[2]

> **B.  To The Extent Plaintiffs Challenge BCBSOK'S Decision Retroactively to Deny Benefits, FEHBA Permits Them To Sue Only OPM, Not the Blue Cross Defendants**

Plaintiffs' fundamental grievance lies in BCBSOK's decision retroactively to deny

the benefits erroneously paid on Plaintiffs' behalf from 2004 to 2007.  In their Second Cause

of Action -- *i.e.*, the FEHBA cause of action against the Blue Cross Defendants -- Plaintiffs,

for example, ask this Court "to order [the Blue Cross Defendants] to pay benefits in

accordance with the policy terms through the 31st day after [the Blue Cross Defendants]

provided [Plaintiffs] with notice of cancellation."  Compl. ¶ 52.  But no less than a dispute

---

[2] Moreover, to the extent Plaintiffs complain simply about the Blue Cross Defendants' alleged non-compliance with the regulatory requirements imposed on it by OPM, Congress has left with OPM, not individual plan enrollees, the responsibility to police FEHBA carriers.  *See Burkey v. Gov't Employees Hosp. Ass'n*, 983 F.2d 656, 658 (5th Cir. 1993) (OPM "superintends" FEHBA program).  Pursuant to its power to "prescribe regulations necessary to carry out [FEHBA], 5 U.S.C. § 8913(a), OPM has established "minimum standards" for carriers, which include the obligation to "[c]omply with chapter 89 of title 5, United States Code [FEHBA], and this part [*i.e.*, FEHBA's implementing regulations]."  5 C.F.R. § 890.201(a)(1).  OPM has also imposed a number of other standards on FEHBA carriers, including the requirement to perform its contract in accordance with "[l]egal and ethical business and health care practices."  48 C.F.R. § 1609.7001(b)(2).  If a carrier fails to comply with OPM's minimum standards, OPM may withdraw its approval of such carrier. *See* 5 C.F.R. § 890.204; 48 C.F.R. § 1609.7001(d).

over enrollment, FEHBA and its regulations nowhere authorize an enrollee to sue the carrier over a denial of benefits; in fact, they expressly prohibit such a suit.  Because FEHBA instead permits Plaintiffs to sue *only* OPM, the Blue Cross Defendants are improper parties to Plaintiffs' FEHBA cause of action for this additional reason.

To be sure, FEHBA's regulations do vest with the carrier the initial responsibility to decide whether a claim should or should not be paid.  *See* 5 C.F.R. § 890.105(a)(1) ("All health benefits claims must be submitted initially to the carrier of the covered individual's health benefits plan.").  And "[i]f the carrier denies a claim (or a portion of a claim), the covered individual may ask the carrier to reconsider its denial," *id.*, a request with which the carrier must comply within 30 days, *see* 5 C.F.R. § 890.105(a)(2).  But that is where the carrier's role ends: "If the carrier affirms its denial or fails to respond . . . the covered individual may ask *OPM* to review the claim." 5 C.F.R. § 890.105(a)(1) (emphasis added). If the individual is unhappy with OPM's determination upon reviewing the carrier's decision, "[a] covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim." 5 C.F.R. § 890.107(c).  Such a judicial review action, though, "must be brought against OPM and *not against the carrier or carrier's subcontractors*," *id.* (emphasis added), and "may not be brought prior to exhaustion of administrative remedies," 5 C.F.R. § 890.107(d)(1).  This entire process -- as well as the fact that a judicial review action may be brought only against OPM and the carrier -- was laid out for Plaintiffs not just in the regulations, but also in the annual Statement of Benefits provided to them. *See, e.g.,* 2007 Statement of Benefits at 97-98 (Ex. 6).

In light of this clear jurisdictional limitation, the Tenth Circuit and other courts have routinely held that suits challenging a denial of benefits may be brought only against OPM, not against the carrier. *See, e.g., Bryan v. OPM*, 165 F.3d 1315, 1318 (10th Cir. 1999) ("A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors."); *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 397 (9th Cir. 2002) ("OPM has created a detailed administrative enforcement scheme for resolving disputes over FEHBA benefits. Pursuant to the regulatory scheme, a beneficiary must first submit a dispute over benefits to the carrier and then to OPM before seeking judicial review. Moreover, beneficiaries may only name OPM, not the carrier, in a suit, and 'recovery . . . [is] limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute.'").

Even Plaintiffs appear to recognize that they are bound by FEHBA's remedial scheme. To this end, Plaintiffs state in their Complaint that they "wrote to BCBS on August 6, 2007, disputing the retroactive termination of benefits" and that "this letter was in conformance with the disputed claims process in the BCBS Plan documents and 5 C.F.R. § 890.105." Compl. ¶ 25. Plaintiffs further interpreted the Blue Cross Defendants' alleged "lack of response as . . . affirmation of the decision to retroactively terminate [Plaintiffs' benefits]." *Id.* ¶ 26. Similarly, Plaintiffs explain that they "wrote to OPM on September 4, 2007 disputing the retroactive termination of benefits" and that "this letter was in conformance with the second step of the disputed claim process." *Id.* ¶ 27. Plaintiffs even allege that, as a result of these efforts, "they have exhausted their administrative remedies as

provided in the BCBS Plan documents and [FEHBA]." *Id.* ¶ 29.   Having seemingly complied to this point with the disputed claims process, Plaintiffs should be well aware that exhausting their administrative remedies is a prerequisite to a suit only against OPM; under no circumstance can they sue the Blue Cross Defendants.

## II.   PLAINTIFFS' COMMON LAW CLAIMS ARE EITHER PREEMPTED OR SUPERSEDED BY FEHBA

In addition to the claim against the Blue Cross Defendants directly under FEHBA (namely, the Complaint's Second Cause of Action), Plaintiffs also lodge a variety of common law claims against the Blue Cross Defendants, all of which are nothing less than alternative ways of challenging the Plan's retroactive denial of benefits.   These claims appear in the Third, Fourth, and Fifth Causes of Action in the Complaint.   It is not clear, however, if those common law claims arise under federal or state common law.   In either case, they must be dismissed as against the Blue Cross Defendants, either as preempted (if they sound in state law) or superseded by FEHBA (if they sound in federal common law).

### A.   If Plaintiffs' Common Law Claims Arise Under State Law, They Are Preempted By FEHBA

Assuming Plaintiffs' common law claims arise under state law, they are preempted. First of all, they are preempted under FEHBA's express preemption provision, which accords preemptive effect to the terms of OPM's contract with BCBSA (CS 1039).   As of a 1998 amendment to FEHBA, the preemption provision states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The provision, as changed in 1998, amended an earlier preemption provision that called for preemption only where state law was *in consistent* with FEHBA contract terms. *See Empire,* 547 U.S. at 686 (explaining preemption provision's history). As the Supreme Court has made clear, "under § 8902(m)(1) as it *now* reads, state law -- whether consistent or inconsistent with federal plan provisions -- is displaced on matters of 'coverage or benefits.'" *Id.* (emphasis added).

Other courts that have considered the scope of FEHBA's preemption provision -- including the Tenth Circuit -- have likewise held that FEHBA "preempts any state law claim challenging the administration of a FEHBA-based plan." *Zukor v. Inova Health Care Services,* No. 99-1909, 2000 U.S. Dist. LEXIS 21998, at *6-7 (E.D. Va. Feb. 23, 2000) (holding that state law claims for negligence, failure to select competent providers, and failure to establish policies for proper diagnosis and treatment of patients were preempted); *see also, e.g., Botsford v. Blue Cross & Blue Shield of Mont., Inc.,* 314 F.3d 390, 393-96 (9th Cir. 2002) (holding that claim brought under state unfair trade practices statute was preempted); *Burkey v. Gov't Employees Hosp. Ass'n,* 983 F.2d 656, 660 (5th Cir. 1993) (holding that claim brought under state statute authorizing damages for unreasonable delay in paying health insurance claim was preempted); *Hayes v. Prudential Ins. Co. of Am., Inc.,* 819 F.2d 921, 926 (9th Cir. 1987) (holding that state law claims for breach of implied covenant of good faith and fair dealing, fraud, and fiduciary duty were preempted); *Myers v. United States,* 767 F.2d 1072, 1074 (4th Cir. 1985) (holding that state law claim for attorneys' fees was preempted); *St. Mary's Hosp. v. CareFirst of Md., Inc.,* 192 F. Supp. 2d 384, 388-89, 390 (D. Md. 2002) (holding that state law claims for breach of contract, relief from

forfeiture, and quantum meruit were preempted); *Farrow v. Kaiser Found. Health Plan of the Mid-Atl. States*, No. 00-24, 2000 U.S. Dist. LEXIS 21999, at *6-7 (E.D. Va. Feb. 25, 2000) (holding that state law negligence claim was preempted); *Carter v. Blue Cross & Blue Shield of Fla., Inc.*, 61 F. Supp. 2d 1241, 1243 (N.D. Fla. 1999) (holding that state law fraudulent inducement claim was preempted); *Kight v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 341-42 (E.D. Va. 1999) (holding that state law claims for negligence, tortious interference with contract, and fraud were preempted); *Negron v. Patel*, 6 F. Supp. 2d 366, 370 (E.D. Pa. 1998) (holding that state law claims for corporate negligence, breach of fiduciary duty, and fraud, among others, were preempted); *cf. Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315, 1320 (10th Cir. 1999) (holding that, even under FEHBA's narrower pre-1998 preemption provision, Oklahoma attorney fee statute is preempted).

This Court too has recently held preempted a plaintiff's state law claims against a FEHBA-plan administrator. In *Ruff v. OPM*, No. 06-cv-1440 (Order of March 30, 2007) (slip op.) (Ex. 7), the plaintiff, an employee of the National Weather Service, sued OPM and BCBSOK for improperly denying him health benefits. Among other things, the "[p]laintiff [sought] damages from Blue Cross under state law, asserting breach of contract and bad faith claims." *Id.* at 2. This Court held that § 8902(m)(1), together with 5 C.F.R. § 890.107(c)'s prohibition of suits against the carrier and its subcontractors, "clearly indicate that Plaintiff's state law claims are preempted." *Id.* at 3. Indeed, "[a] dispute over benefits is precisely the kind of dispute that FEHBA preempts." *Id.* at 4.

Just as in *Ruff*, Plaintiffs' common law claims all involve "a dispute over benefits" -- in fact, they are, as asserted against the Blue Cross Defendants, simply creative variations on a single challenge to the Plan's retroactive denial of benefits. Plaintiffs' promissory estoppel claim, for example, complains of the Blue Cross Defendants' alleged misrepresentations regarding benefit payments and asks that the Court "order the Defendants to pay benefits." Compl. ¶ 54-55, 59. Their claim for breach of good faith and fair dealing alleges that "[r]ather than pay the [Plaintiffs'] claims for benefits, [the Blue Cross Defendants] retroactively terminated the [Plaintiffs'] coverage and refused to pay benefits." *Id.* ¶ 62. And Plaintiffs' breach of contract claim asserts that their "health claims should have been paid by [the Blue Cross Defendants] in accordance with the policy terms" and that "[the Blue Cross Defendants] ha[ve] wrongfully refused to pay policy benefits to or on behalf of the [Plaintiffs]." *Id.* ¶¶ 68-69. Plaintiffs' Complaint, in short, "is precisely the kind of dispute that FEHBA preempts." *Ruff*, slip op. at 4 (Ex. 7).

To be precise, though, it is not FEHBA itself which preempts state law, but rather "[t]he terms of any contract under this chapter" -- in this case, the contract between OPM and BCBSA (CS 1039) --- "which relate to the nature, provision, or extent of coverage or benefits" to which FEHBA accords preemptive effect. 5 U.S.C. § 8902(m)(1). Plaintiffs' common law claims directly implicate a variety of CS 1039's terms relating to coverage and benefits, which thus preempt Plaintiffs' claims. As noted, Plaintiffs' claims all challenge the Plan's decision retroactively to deny benefits to Plaintiffs by attempting to recapture benefits BCBSOK previously paid to Plaintiffs' providers. Section 2.3(g) of CS 1039, however, instructs BCBSOK to do just that: "If the Carrier or OPM determines that a

Member's claim has been paid in error for *any reason*, the Carrier shall make a prompt and diligent effort to recover the erroneous payment to the member *or, if to the provider, from the provider*." 2006 Master Contract, § 2.3(g) (Ex. 2). To the extent Plaintiffs allege that the Blue Cross Defendants improperly terminated their enrollment, their claims are preempted by § 2.1(a) of CS 1039, which instructs that the Carrier is to follow the enrollment decisions of the government. *See, e.g.,* 2006 Master Contract, § 2.1(a)(1) ("The Government personnel office having cognizance over the Enrollee shall promptly furnish notification of such election to the Carrier."); *id.* § 2.1(a)(2) ("A person's eligibility for coverage, effective date of enrollment, the level of benefits (option), the effective date of termination or cancellation of a person's coverage, the date any extension of a person's coverage ceases, and any continuance ceases, shall all be determined in accordance with regulations or directions of OPM given pursuant to [FEHBA]."). Again, Plaintiffs' claims need not actually be *inconsistent* or conflict with any contract provisions; as a result of the 1998 FEHBA amendment, there is preemption on a topic addressed in a FEHBA contract even if the state law claim were just supplementary to or duplicative of federal remedies. *See Empire*, 547 U.S. at 686.

In sum, Plaintiffs' common law claims constitute a dispute about benefits and coverage under a FEHBA plan and implicate contract terms on those topics. As such, to the extent they arise under state law, they are expressly preempted by § 8902(m)(1).

In addition to being preempted by FEHBA's express preemption provision, Plaintiffs' common law claims are also preempted under ordinary principles of conflict preemption. "[C]onflict preemption occurs . . . where state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009).   "Federal regulations," moreover, "have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  As explained above, Congress and OPM, through FEHBA and its implementing regulations, have established a comprehensive remedial scheme for exactly the type of enrollment and benefits grievances Plaintiffs complain of here, culminating in judicial review actions only against the government.  The Tenth Circuit has deemed this remedial scheme the exclusive means by which FEHBA plan enrollees may redress enrollment and benefits grievances and has deemed the government the only proper defendant in any eventual suit.  *See, e.g., Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315, 1318 (10th Cir. 1999) ("in [FEHBA] disputes [] courts only have jurisdiction to review final actions, after exhaustion, *and only one remedy is available*) (emphasis added*); Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir.), *cert. granted*, 130 S. Ct. 396 (2009) ("suits related to a federal agency's health-benefits-coverage decisions *must* name as the defendant the Office of Personnel Management or the employing agency rather than the insurance carrier") (emphasis added).  To allow Plaintiffs to circumvent FEHBA by suing not the government, but the carrier, under potentially lucrative state-law tort theories would directly undermine the exclusivity of FEHBA's carefully established remedial mechanisms.

**B.   If Plaintiffs' Common Law Claims Arise Under Federal Common Law, They Are Superseded By FEHBA**

If Plaintiffs' common law claims against the Blue Cross Defendants do not arise under state law, then they would appear to arise under federal common law.  If that is the

case, then they must be dismissed as well, for the reason they are superseded by FEHBA. Specifically, federal common law is superseded when "the legislative scheme [has] spoke[n] directly to a question." *Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981). Here, in the face of Congress and OPM having directly spoken to the issue of enrollment and benefits grievances by creating, through FEHBA, a comprehensive administrative remedy followed by judicial review actions exclusively against the government, there is neither room nor reason for the courts to fashion alternative common law remedies against the carrier.

In *Milwaukee*, the Supreme Court considered the question present here:   Whether a plaintiff's federal common law cause of action could survive in the face of a federal statute and regulations on the same subject.   There, the state of Illinois sued a number of municipalities in Wisconsin under a common law nuisance theory, alleging that the cities' sewage discharges constituted a danger to the health of Illinois' citizens.   451 U.S at 309. At issue was whether the Federal Water Pollution Control Act and its implementing regulations left any room for such a federal common claim; the Court held it did not.

The Court first explained that because the federalism concerns created by the preemption doctrine "are not implicated in the same fashion when the question is whether federal statutory or federal common law governs, . . . the same sort of evidence of a clear and manifest [preemptive] purpose is not required." *Id.* at 316-17.   Rather, courts are to "start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *Id.* at 317.   The test for whether federal common law applies thus comes down to "whether the legislative scheme 'spoke directly to a question' . . . not whether Congress had affirmatively proscribed the use

of federal common law." *Id.* at 315 (citation omitted).   Federal common law, in other words, "is resorted to 'in the absence of an applicable Act of Congress.'" *Id.* at 314 (citation omitted).   For courts to authorize federal common law causes of action notwithstanding parallel federal statutes would, in the Court's view, implicate serious separation of powers concerns: "Our commitment to the separation of powers is too fundamental to continue to rely on federal common law by judicially decreeing what accords with common sense and the public weal when Congress has addressed the problem." *Id.* at 315 (internal citations and quotations omitted).

Applying these standards, the *Milwaukee* Court found that the Federal Water Pollution Control Act and its regulations left no room for the federal common law of nuisance: "Congress has not left the formulation of appropriate federal standards to the courts through application of often vague and indeterminate nuisance concepts and maxims of equity jurisprudence, but rather has occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency." *Id.* at 317.   Given the regulatory standards imposed by the EPA, the Court found that "[f]ederal courts lack authority to impose more stringent effluent limitations under federal common law than those imposed by the agency charged by Congress with administering this comprehensive scheme." *Id.* at 320.   The Court further found that not only did the EPA's administrative regulations displace federal common law, but standards created even by *state* agencies delegated authority by the EPA did too: "It is quite clear from the foregoing that the state agency duly authorized by the EPA to issue discharge permits under the Act has addressed the problem of overflows from petitioners' sewer system." *Id.* at 322-23.   As a

result of these administrative standards, the Court determined that "[t]here is no 'interstice' here to be filled by federal common law: overflows are covered by the Act and have been addressed by the regulatory regime established by the Act. Although a federal court may disagree with the regulatory approach taken by the agency with responsibility for issuing permits under the Act, such disagreement alone is no basis for the creation of federal common law." *Id.* at 323.

The Tenth Circuit, in *Resolution Trust Corp. v. Frates*, subsequently considered whether federal common law could co-exist with a federal statute on the same subject, although it termed the question one of "supersession." 52 F.3d 295, 296 (10th Cir. 1995) ("The issue is whether 12 U.S.C. 1821(k) supersedes 'federal common law.'"). The federal statute at issue in *Frates* provided that "[a] director or officer of an insured depository institution may be held personally liable for monetary damages . . . for *gross* negligence," 12 U.S.C. § 1821(k) (emphasis added); the plaintiff, though, asserted a federal common law cause of action for *simple* negligence. *Frates*, 52 F.3d at 296. Contrasting supersession somewhat with the preemption doctrine applicable to state laws, the Tenth Circuit explained that "supersession involves the less rigorous test of whether Congress spoke directly to the matter in the statutory enactment." *Id.* at 296-97. "Applying the more lenient test required by supersession analysis," the Tenth Circuit held that "Congress has spoken directly to the standard of negligence issue" and that, as a result, the plaintiff's federal common law claim for simple negligence was superseded. *Id.* at 297.

In the FEHBA context specifically, at least one court has answered the similar question of whether a FEHBA plan enrollee can bring suit against a carrier not under federal

common law, but rather under a federal statute other than FEHBA.  In *Bridges v. Blue Cross & Blue Shield Ass'n,* 935 F. Supp. 37 (D. D.C. 1996), the plaintiff sought to evade OPM's mandatory administrative remedy for benefits grievances in favor of a separate federal cause of action, instead asserting a RICO claim against a FEHBA carrier.  In dismissing the RICO count, the *Bridges* court noted that Congress and OPM, through FEHBA and its regulations, had created a "detailed enforcement scheme" that "leaves no room for a RICO action." *Id.* at 43.  FEHBA, the district court said, "'envisions a comprehensive administrative rubric for the protection of federal [employees],'" not enforcement of enrollee rights through RICO. *Id.* (quoting *Danielsen v. Burnside-Ott Aviation Training Ctr.,* 941 F.2d 1220, 1227 (D.C. Cir. 1991).  To permit plaintiff to bring a RICO claim, the court reasoned, would not in any manner be "consistent with the underlying legislative scheme of the FEHBA to apply such a [RICO] remedy." *Id.* at 42.

No less than the RICO claim at issue in *Bridges,* the federal common law claims that plaintiff asserts here against the Blue Cross Defendants have no place in the face of FEHBA's "comprehensive administrative rubric" and "detailed enforcement scheme."  As explained above, Congress has delegated to OPM the broad power to "prescribe regulations necessary to carry out [FEHBA]," 5 U.S.C. § 8913(a), and it has directed OPM to establish an administrative process to decide benefits disputes "in an individual case," *id.* § 8902(j). OPM has exercised its powers by establishing a comprehensive administrative remedy for enrollment and benefits grievances.  *See* 5 C.F.R. § 890.104 (enrollment); *id.* § 890.105 (benefits).  Should enrollees remain dissatisfied after availing themselves of these administrative procedures, OPM has further provided they may take their grievance to court

-- in a suit against the employing office in the case of enrollment disputes, 5 C.F.R. § 890.107(a), and a suit against OPM in the case of benefits disputes, 5 C.F.R. § 890.107(c). In light of the comprehensive remedies already provided in FEHBA and its implementing regulations, there is simply "no interstice here to be filled by federal common law." *Milwaukee*, 451 U.S at 323.

Finally, it would be particularly inappropriate to permit federal common law causes of action to supplement or supplant FEHBA given that FEHBA contains an express preemption provision. To suggest that Congress would have explicitly displaced *state* common law on matters of coverage and benefits, yet implicitly authorized, *sub silentio*, the creation of *federal* common law, is nonsensical, especially considering that the test for displacement of federal common law is "more lenient" than the one for preemption of state law. As a result, there should be no question that FEHBA and its regulations supersede the Plaintiffs' alternative federal common law causes of action. *See generally Medcenters Health Care v. Ochs*, 854 F. Supp. 589, 593-594 (D. Minn. 1993) ("The Court also finds the Ochs's argument that this Court should adopt Minnesota state law as the federal common law without merit. Put plainly, the Ochs urge this Court to adopt as federal law a state law that would override the contractual terms because this Court cannot apply the same state law because it would override the contractual terms. It seems incongruous that this Court should adopt the very state law that, by its inconsistency with the contract at issue, propels the matter into the province of federal law."), *aff'd*, 26 F.3d 865 (8th Cir. 1994).

For the foregoing reasons, the Blue Cross Defendants' Motion to Dismiss should be granted.

Respectfully submitted,


s/Alison M. Howard
KEVIN D. GORDON, OBA# 10826
ALISON M. HOWARD, OBA# 19835
- Of the Firm -
CROWE & DUNLEVY, P.C.
20 North Broadway, Suite 1800
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
kevin.gordon@crowedunlevy.com
alison.howard@crowedunlevy.com

- And Of Counsel -

Anthony F. Shelley
MILLER & CHEVALIER Chartered
655 Fifteenth Street, NW, Suite 900
Washington, D.C.  20005
Telephone:  (202) 626-5924
Facsimile:  (202) 626-5801
ashelley@milchev.com

ATTORNEYS FOR DEFENDANTS,
BLUECROSS BLUESHIELD
ASSOCIATION AND BLUECROSS
BLUESHIELD OF OKLAHOMA

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2010, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Simone Gosnell Fulmer
Carin L. Marcussen
WHITTEN BURRAGE PRIEST FULMER
ANDERSON & EISEL
211 N. Robinson Avenue, Suite 1350
Oklahoma City, OK  73102

sfulmer@whittenburragelaw.com
cmarcussen@whittenburragelaw.com

ATTORNEYS FOR PLAINTIFF

Kevin D. Gordon
Alison M. Howard
CROWE & DUNLEVY, P.C.
20 North Broadway, Suite 1800
Oklahoma City, OK 73102-8273

kevin.gordon@crowedunlevy.com
alison.howard@crowedunlevy.com

ATTORNEYS FOR DEFENDANTS,
BLUECROSS BLUESHIELD
ASSOCIATION AND BLUECROSS
BLUESHIELD OF OKLAHOMA


s/Alison M. Howard
ALISON M. HOWARD, OBA# 19835
CROWE & DUNLEVY, P.C.
20 North Broadway, Suite 1800
Oklahoma City, Oklahoma 73102
Telephone:  (405) 239-6675
Facsimile:  (405) 272-5933
alison.howard@crowedunlevy.com